MARGARET F. GRIFFIN *vs.* CENTREVILLE SAVINGS BANK.

MAY 25, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

48

ROBERTS, J. This is an action in assumpsit brought by one of the owners of a fund that had been on deposit with the defendant in a savings account owned jointly by the plaintiff and her husband to recover from the defendant for an allegedly unlawful payment of the fund to the other joint owner thereof. The case was heard by a justice of

the superior court sitting with a jury, and upon the completion of the introduction of evidence each of the parties moved for a directed verdict. The court then stated the conclusions which it had reached and gave decision to the plaintiff in the amount of $4,811.29 with interest at 3 per cent from October 21, 1955 to September 12, 1958, the date of the writ. It appears from remarks addressed by the court to the jury that he intended his decision to constitute the granting of the plaintiff's motion for a directed verdict as well as a denial of the defendant's motion therefor.

The case is before this court on the defendant's exceptions to the decision of the trial justice in denying its motion and granting the plaintiff's motion. The case is also in this court on the plaintiff's alleged exception to the failure of the trial court to order payment of interest at the rate of 6 per cent on the award from the date of the writ to the date of the decision.

It appears from the evidence that plaintiff and her husband on April 28, 1952 deposited $4,500 with defendant bank in a joint savings account and that defendant thereupon issued passbook No. 37216 to them wherein it appeared that the account was in the names of both as the joint owners thereof. The plaintiff apparently concedes that on two occasions at least her husband had the passbook in his possession for the purpose of presenting it to the bank, once on August 8, 1955 when he made a modest deposit, and again on October 21, 1955 when he made a withdrawal. She further testified without contradiction, however, that other than on those two occasions she retained possession of the passbook at all times.

On September 11, 1956 the husband went to defendant bank and reported the passbook lost. While there he executed an application for the issuance of a duplicate passbook wherein he stated under oath: "* * * I am the owner of pass book No. 37216 issued by the Centreville Savings Bank, and that said pass book has been lost or destroyed,

and that I have not hypothecated nor pledged said book nor transfered nor given it to any one; and I hereby make application for the issue of a duplicate book in its stead." Attached thereto is the sworn statement of an employee of a newspaper that is published in the town where defendant bank is located wherein he states that a notice that an application had been made for the issuance of a duplicate passbook had been published pursuant to law.

While his application for a duplicate passbook was pending, the husband made four small deposits in the joint account. On December 5, 1956 defendant bank issued a duplicate passbook to the husband. Thereafter, on December 21, 1956, the husband withdrew $2,500 from the joint account and on February 7, 1957 made another withdrawal therefrom in the amount of $500. On April 12, 1957 the husband, while in Florida and using a Florida bank as an intermediary, withdrew the balance of the fund remaining in the joint deposit, which amounted to $2,063.77. Shortly thereafter plaintiff was informed that the joint account had been closed and she thereupon went to defendant bank and, presenting the original passbook, in substance made a demand for the total amount of the fund on deposit as shown therein. It is not disputed that the withdrawals made by the husband after December 5, 1956 were made by defendant bank upon the presentation to it of the duplicate book that it had issued to the husband. Neither is it disputed that the original passbook issued in April 1952 was never lost or destroyed but throughout the entire period under consideration remained in the possession of plaintiff.

The trial justice in his decision referred to a provision of defendant's bylaws, which are printed in every passbook issued by it to depositors. That provision states in substance that funds on deposit may not be withdrawn unless the depositor produces and presents the original passbook. He ruled that this provision is a part of the contract entered into by defendant with its depositors at the time the

first deposit is made. He further noted that the authority of defendant bank to issue duplicate passbooks to depositors when the original passbook is lost or destroyed is governed by G. L. 1956, §19-11-7, and ruled that defendant, in issuing the duplicate passbook to the husband in the instant case, had failed to comply strictly with those provisions of the statute relating to the advertising of the pendency of an application for a lost or destroyed passbook. For this reason he ruled that the issuance of the duplicate passbook to the husband was illegal and consequently payments that were made by defendant from the fund on deposit upon a presentation of the duplicate passbook constituted breaches of the contract for which plaintiff was entitled to recover.

There is in evidence here a signature card, so called, bearing account No. 37216, which appears to have been signed by plaintiff Margaret F. Griffin and her husband Edward J. Griffin when they opened the joint account with defendant on April 28, 1952. Also in evidence is the passbook bearing account No. 37216, which it is not disputed was issued to plaintiff and her husband at the time the account was opened. There is contained in this passbook, among other things, a copy of the bylaws of the savings department of defendant bank. In article 1 thereof provision is made for the issuance of passbooks to depositors and for the assent of depositors to the rules, regulations, and bylaws of the corporation, which is to be made in writing at the time of the initial deposit.

In evidence also is a photostatic copy of a master account card which bears the number 37216. It appears from this exhibit that plaintiff and her husband opened their joint account with defendant on April 28, 1952 by making an initial deposit of $4,500. Across the face of this account card there is printed a form through the execution of which the depositors may assent to the rules and regulations of the bank. Beneath this printed form there is space for at

least two signatures. However, it does not appear from the exhibit that either of the joint depositors here signed that form of assent. It appears from an examination of the passbook which is in evidence that there is printed across the bottom of each page thereof: "It is agreed that this account is opened subject to the rules and regulations of this bank."

In art. 3 of the bylaws of defendant corporation's savings department as they are set out in the passbook, it is provided that "Deposits shall only be withdrawn by the depositor, or by some person by him or her legally authorized; but no person shall receive any part of his or her principal or dividend, without producing the original book, that such payment may be entered thereon * * *." It is not disputed that defendant bank, upon an application therefor by plaintiff's husband, issued a duplicate passbook for this account on December 5, 1956. The conditions upon which such duplicate passbook may be issued by a banking institution are prescribed in G. L. 1956, §19-11-7. There is nothing in the evidence here from which it appears that plaintiff had any knowledge that her husband had applied for or been issued a duplicate passbook under the statute or that the husband, by presenting such duplicate passbook, had exhausted the joint account by making three withdrawals therefrom in the total amount of $5,063.77.

Unless it is specially agreed otherwise, a banking institution and its depositors stand in the debtor and creditor relationship. *R. H. Kimball, Inc.* v. *Rhode Island Hospital National Bank,* 72 R. I. 144; *State* v. *Grills,* 35 R. I. 70. The rights and obligations of each with respect to the fund on deposit will be governed by the terms of the contract which they enter into at the time of the establishment of the relationship. Where a savings bank by its bylaws provides for the issuance of a passbook to each of its depositors and sets out therein the rules, regulations, and bylaws for the conduct of its business, such rules, regulations, and

bylaws, when assented to by the depositor, will constitute his contract with the bank. This court gave clear indication that it accepts this proposition in *Palmer* v. *Providence Institution for Savings,* 14 R. I. 68, and in *Raferty* v. *Reilly,* 41 R. I. 47.

The passbook issued in the instant case contained a copy of the bylaws of defendant's savings department and included therein was the provision that depositors could not make a withdrawal from the fund on deposit "without producing the original book" as well as a printed statement on each page thereof that the account was opened subject to the rules and regulations of the bank. It is true that the record does not indicate that the depositors or either of them expressly accepted these bylaws as a part of their contract with defendant. In our opinion, however, this absence of express consent is not conclusive that no contractual relationship arose. A substantial line of authorities supports the proposition that the rules and regulations of a bank published in a passbook issued to a depositor may become a part of the contract between them although the depositor does not expressly consent thereto. These courts hold that the acceptance and retention of the passbook in such circumstances by the depositors constitutes a sufficient consent to be bound by such rules and regulations as are therein published and makes them a part of the contract. *Jefferson County Bldg. & Loan Ass'n* v. *Southern Bank & Trust Co.,* 225 Ala. 25; *Polonsky* v. *Union Federal Savings and Loan Ass'n,* 334 Mass. 697; *Davis* v. *Chittenden County Trust Co.,* 115 Vt. 349. In *Polonsky* v. *Union Federal Savings and Loan Ass'n, supra,* the Massachusetts court said at page 700: "But according to the weight of authority a depositor by accepting and retaining a pass book wherein such a provision is printed is deemed to have assented to it, and the provision becomes a part of the contract between the bank and the depositor."

It is our opinion that a contract between the bank and

the joint depositors here followed their acceptance and retention of the passbook that was issued to them by the bank and that the bylaws therein set out became a part of that contract. Under the terms thereof the bank was obligated to require the production of the original passbook before it paid out any part of the fund on deposit, and when it did pay that fund to plaintiff's husband here without requiring that he produce the original passbook, it committed a breach of contract for which it is liable to plaintiff. A requirement in such contracts that the production of the passbook be a condition precedent to payment by the bank from the fund on deposit has frequently been held to be a reasonable contractual provision and as a general rule is enforced as such by the courts. *Mercantile Savings Bank* v. *Appler*, 151 Md. 571; *Badders* v. *Peoples Trust Co.*, 236 Ind. 357; *LaValley* v. *Pere Marquette Employes' Credit Union*, 342 Mich. 639.

The rule is stated with clarity and conciseness in *Davis* v. *Chittenden County Trust Co., supra,* at page 354, where the Vermont court said: "We hold that the rules printed in the pass book became part of the contract of deposit; that such rules were for the benefit of the depositor or depositors as well as of the bank and they could not be waived by the bank alone. The result is not affected by the fact that this was a joint account and that the person who withdrew the money was one of the depositors. Each of the depositors was a party to the contract and the rule requiring production of the pass book could be waived only by the bank in concurrence with both of them."

The defendant contends that it is not liable in the instant case because of the provisions of G. L. 1956, §19-11-4, wherein it is provided that a fund on deposit in a joint account may be paid by the bank to either of the persons in whose names the account stands and that "the receipt of the person so paid shall be a valid and sufficient release and discharge on account of the payment so made." The

short answer to this contention is that defendant in the instant case elected to enter into a contract with the depositors whereby it agreed, *inter alia,* that it would not pay out the fund on deposit without requiring that the original passbook be produced. Whatever effect might be given to this statute, it certainly should not be construed as preventing a banking institution from enlarging by contract its liability in such circumstances if it so elects. Similar statutes were so construed in *Badders* v. *Peoples Trust Co.* and *Mercantile Savings Bank* v. *Appler, supra.*

The defendant has also directed our attention to the provisions of G. L. 1956, §19-11-7, the lost bank book act, so called, and argues that defendant is thereunder relieved of liability to plaintiff because of the payments made to her husband. This statute confers authority upon banking institutions to issue duplicate passbooks when the book originally issued has been lost or destroyed. It requires a depositor applying for the issuance of a duplicate passbook to make a sworn statement that the original book has been lost or destroyed and prescribes for the advertising of the application. It further provides that at the expiration of a prescribed period of time the banking institution may then issue a duplicate passbook and when it does so pursuant to the statute, it shall be "discharged from all liability on account of the issue of the original book."

The obvious purpose of this statute was to confer authority upon banking institutions to issue duplicate passbooks that would have the status of a passbook of original issue. When such a duplicate passbook is issued pursuant to the statute, the original passbook becomes null and void, but it cannot reasonably be argued that the legislature, in enacting this legislation, intended that it could be invoked for the purpose of altering the terms of contracts existing between a bank and its depositors without the consent of the depositor to such alteration. It does not appear from the record in this case that plaintiff either joined in mak-

ing an application for the issuance of a duplicate book or had any knowledge that such application was pending. In such circumstances the issuance of the duplicate book will not confer upon it the status of an original book within the contemplation of the bylaw or of the contract into which such bylaw was merged.

We are of the opinion that the contract between plaintiff and defendant bank remained in effect, its terms unchanged by the issuance of the duplicate book to plaintiff's husband. In such circumstances the action of defendant bank in making payments from the fund on deposit upon presentation of the duplicate passbook was a breach of its obligation to make such payments only on presentation of the original passbook issued to plaintiff and her husband at the time the account was opened. For this breach of contract defendant is liable, and we therefore perceive no error in the decision of the trial justice to direct the verdict for plaintiff, granting a motion for direction in her behalf and denying defendant's motion for such direction.

We turn now to the plaintiff's contention that there is before this court her exception to the trial court's failure to award her interest on the amount of the decision at the rate of 6 per cent. We have scrutinized the transcript closely without finding therein a motion by the plaintiff that she be awarded interest on the decision at any stated rate or in any specific amount. We will not speculate as to the subject matter of any colloquy between the court and counsel in this regard. It was the duty of the plaintiff's counsel, if she desired an award of such interest, to expressly move the court therefor and in the event that such motion was denied to then take an exception to that denial. No valid exception lies to the failure of a trial court to undertake some action in the absence of an express motion therefor. For this reason the purported exception of the plaintiff is not entitled to consideration and is overruled pro forma.

All of the exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Louis A. Geremia,* for plaintiff.

*Francis V. Reynolds, Richard P. McMahon,* for defendant.