CHICKERNEO, APPELLANT, v. SOCIETY NATIONAL BANK OF CLEVELAND, APPELLEE.

(No. 78-697—Decided June 13, 1979.)

*Dworkin & Bernstein Co., L. P. A., Mr. Melvyn E. Resnick* and *Mr. Michael Goren,* for appellant.

*Messrs. Thompson, Hine & Flory, Mr. S. Stuart Eilers* and *Ms. Barbara J. Arison,* for appellee.

PAUL W. BROWN, J. The nature of a bank's right to setoff was described by this court in *Bank* v. *Brewing Co.* (1893), 50 Ohio St. 151, at pages 158-159, as follows:

"It is said to be a well settled rule of the law merchant, that a bank has a general lien on all the funds of a depositor in its possession, for any balance due on general account, or other indebtedness contracted in the course of their dealings, and may appropriate the funds to the payment of such indebtedness. The right to make such appropriation, it is held, grows out of the relation of the parties as debtor and creditor, and rests upon the principle, that 'as the depositor is indebted to the bank upon a demand which is due, the funds in its possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made.' *Falkland* v. *Bank,* 84 N. Y. 145. Though this right is called a lien, strictly it is not, when applied to a general deposit; for, a person cannot have a lien upon his own property, but only on that of another; and as we have seen, the funds on general deposit in a bank, are the property of the bank. Properly speaking, the right, in such case, is that of setoff, arising from the existence of mutual demands. The practical effect, however, is the same. The cross demands are satisfied so far as they are equal, leaving whatever bal-

ance that may be due on either, as the true amount of the indebtedness from the one party to the other."

In *Witham* v. *South Side Building & Loan Assn.* (1938), 133 Ohio St. 560, at page 562, the right to setoff was defined as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction."

Essential, then, to the validity of a setoff is that there be mutuality of obligation. Thus, in *Nichols* v. *Metropolitan Life Ins. Co.* (1941), 137 Ohio St. 542, this court stated in the syllabus that:

"A joint and survivorship account in a closed bank, in the absence of some special equity, may not be set off against an indebtedness to the bank owed by one only of the payees of the joint account."

Only one of the payees (depositors) to the joint and survivorship account in *Nichols* was indebted to the bank, the same payee who sought the setoff.[1] The account money had been furnished not by the indebted payee, but by the co-payee. Mutuality of obligation was therefore lacking and a setoff would have been improper.

Appellant contends that *Nichols* is dispositive of this action. His contention is essentially that the realities of ownership were such that appellant owned all the funds in the account[2]; that the only obligations owed the bank were those of John A. Chickerneo, not of appellant; and that

---

[1] The fact that *Nichols* concerns a *depositor's* reciprocal right to setoff an account against an obligation owed to the bank, does not detract from its applicability to the instant cause. Mutuality of obligation is of equal significance whether a bank, or a depositor, seeks the setoff.

[2] This court has held that a deposit in a joint and survivorship account creates a presumption of co-ownership of funds in the depositors. *Vetter* v. *Hampton* (1978), 54 Ohio St. 2d 227; *In re Estate of Duiguid* (1970), 24 Ohio St. 2d 137. This presumption is rebuttable, however, where evidence is adduced to show the realities of ownership. *Vetter, supra*; *In re Estate of Svab* (1967), 11 Ohio St. 2d 182, 184. The realities of ownership were stipulated by the parties here, *i. e.*, that the funds were furnished exclusively by appellant.

therefore mutual obligations between the bank and appellant or the bank and John A. Chickerneo necessary to justify a setoff were non-existent.

We would be inclined to agree with appellant, were it not for the fact that at the time the account was created, and at the time of the setoff, the bank had rules and regulations in effect governing accounts like appellant's. These rules and regulations must be considered in conjunction with the case law.

Appellee's rules and regulations relevant to this action provide, as follows:

"1. As used herein, the term 'bank' shall mean Society National Bank of Cleveland; *the term 'depositor' shall mean the person or persons in whose name the account is carried on the books of the bank* and shall include the masculine, feminine and neuter genders and the plural as well as the singular wherever the context so admits.
"* * *

"15. *Any indebtedness now or hereafter owing to the bank by a depositor,* either individually or jointly, *may be charged to any deposit account* in the name of such depositor or *in the name of such depositor and another* or others." (Emphasis added.)

The creation of a joint and survivorship account is a contractual arrangement. *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121, 124. Rules and regulations adopted by the bank are, or become a part of, the contract between the bank and its depositors.[3] The question thus pre-

---

[3] R. C. 1107.06 provides, in part:

"(C) At the time of opening an account for the making of savings deposits, the depositor shall be issued a statement containing the existing rules and regulations adopted by the bank. Such statement may be set forth upon the depositor's signature card.

"(D) All owners of any interest in each account, commercial or savings, who are such on January 1, 1968, shall be bound by the bank's rules and regulations of such date governing accounts. Subsequent amendments to such rules and regulations shall be posted in the bank and shall be binding thereafter upon the then owners of any interest in all then existing accounts.

"(E) A passbook shall be issued to each savings depositor * * *.

sented is whether these particular rules and regulations allow the bank to do what it otherwise could not do under prior case authority, *i. e.*, to setoff John A. Chickerneo's obligations with the funds supplied solely by the appellant in the joint and survivorship account.

The rules and regulations are not difficult to understand. "Depositor" is defined as a person "in whose name an account is carried on the books." Since the joint and survivorship account in issue was carried in the name of appellant and John A. Chickerneo, both were "depositors." The rules and regulations provide further that any indebtedness owed the bank by a "depositor" "may be charged" to an account "in the name of such depositor and another." Here the bank charged the account of the debtor-depositor, John A. Chickerneo, "and another," the appellant. Accordingly, the bank's actions were in conformity with the adopted rules and regulations, and thus lawful under the terms of the contract unless the rules and regulations were in conflict with the public policy of this state.

Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. The principle must be applied with caution and limited to those circumstances patently within the reasons upon which the doctrine rests. *Lamont Building* v. *Court* (1946), 147 Ohio St. 183, 185; *Gugle* v. *Loeser* (1944), 143 Ohio St. 362, 367.

Appellant has not persuaded this court that the circumstances before us are such that the public welfare will suffer if we allow these regulations to stand. The record shows that the appellant voluntarily opened an account with the bank and voluntarily selected a joint and survivorship account with John A. Chickerneo as a co-depositor. Other accounts were available at the bank which would

By accepting such passbook the depositor acknowledges the receipt of and assents to the rules and regulations and any amendments thereto, adopted by the bank, governing such deposits."

These provisions effectively incorporate bank rules and regulations into the contract between the bank and the depositor.

not have subjected appellant to a right of setoff. Under these circumstances, we will not interfere with the contract freely entered into by the parties.

For the foregoing reasons, this court holds, in agreement with the well-reasoned opinion of the Court of Appeals, that where a bank provides by rule, which rule becomes contractually binding on depositors, for the right to setoff funds in a joint and survivorship account against debts owed the bank by a party to the account, the bank may lawfully setoff such funds without violating the public policy of this state, although the funds in the account are supplied exclusively by a non-debtor depositor.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, SWEENEY and HOLMES, JJ., concur.

CELEBREZZE, C. J., and LOCHER, J., dissent.

CELEBREZZE, C. J., dissenting. R. C. 1101.06, which expresses the various purposes underlying the Chapters of the Revised Code which deal with banks and building and loan associations, clearly indicates that those statutory provisions seek to safeguard, among others, the interests of a depositor such as Andrew Chickerneo. For example, division (B) of that statute declares that one of the purposes of the referenced legislation is "[t]o provide for *the protection of the interests of depositors,* creditors, shareholders, and the general public in banks doing business in this state." (Emphasis added.)

As the majority has noted in footnote No. 3 of its opinion, R .C. 1107.06, which deals with the subject of "deposits," specifies, in division (E), that by the acceptance of a "passbook the depositor acknowledges the receipt of and assents to the rules and regulations and any amendments thereto, adopted by the bank, governing such deposits." However, division (B) of that same statute also

indicates that in handling funds such as those of the appellant, a bank is nevertheless required to "secure such deposits *in the manner and to the extent provided or authorized by law* * * *." (Emphasis added.)

Furthermore, although a bank may promulgate various rules and regulations to govern a contractual relationship with its depositors, there are necessary limits to its rulemaking authority. In the second paragraph of the syllabus in *Fourth & Central Trust Co.* v. *Rowe* (1930), 122 Ohio St. 1, this court delineated the permissible scope of those rules and regulations by establishing the following caveat:

"The reasonable rules and regulations adopted by a savings bank and printed in its pass book, signed and agreed to by a depositor, form a contract between the bank and the depositor, and each is bound thereby *unless such rules and regulations are contrary to some positive rule of law or are against public policy.*" (Emphasis added.)

The relevant inquiry, therefore, is not only whether those rules and regulations are contrary to public policy, as the majority has acknowledged, but whether they also conflict with "some positive rule of law." I agree that appellee's rules must be considered in conjunction with applicable case law and, as a result of that analysis, I find their application, in the record before us, contrary to established precedent encompassing the subject of joint and survivorship accounts. Accordingly, I must respectfully disagree with the conclusion that the mere existence of Rules 1 and 15 automatically authorizes appellee to do that which it could not do under prior case authority.

In *Union Properties* v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430, this court held that in controversies concerning joint and survivorship accounts, which arise during the joint lives of the depositors, the "form of the deposit" is not determinative as to the respective interests of the joint depositors. The court indicated the following, at pages 434-435:

"In our opinion, in controversies like the present

one involving the deposit and arising during the joint lives of the depositors, the form of the deposit should not be treated as conclusive on the subject of joint ownership and the door should be opened to evidence that the deposit was in truth made and maintained on a different basis. In other words, the 'realities of ownership' may be shown." See, also, *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121; *Vetter* v. *Hampton* (1978), 54 Ohio St. 2d 227.

In *Union Properties, supra,* the facts revealed a joint account established in the names of both a husband and wife. The court concluded, however, that a creditor of the husband could not appropriate the funds in the account where the evidence established that the money was, in reality, the *sole* property of the wife. Or, as it has been paraphrased elsewhere, such a joint account is not subject to claims against the noncontributing party even though created with his consent. *Hershey* v. *Bowers* (1966), 7 Ohio St. 2d 4, 6. Similarly, the funds in a joint and survivorship account cannot be used as a setoff against an indebtedness to the bank owed by only one of two depositors where the money was furnished solely by the other, non-debtor depositor and mutuality of obligation is lacking. *Nichols* v. *Metropolitan Life Ins. Co.* (1941), 137 Ohio St. 542.

The continued relevance of these legal principles is further evidenced by the previously mentioned obligation of R. C. 1107.06(B) that a financial institution "secure such deposits in the manner and to the extent provided or authorized by law * * *."

Thus, a perusal of the foregoing indicates that a depositor in a joint and survivorship account cannot be precluded, by rule or regulation, from establishing, by probative evidence, corresponding degrees of ownership in such an account before any summary seizure of its funds. Moreover, in light of *Union Properties, supra,* and *Nichols, supra,* it follows logically that a claim on that joint account can only be satisfied to the extent of a debtor-depositor's true or proven interest therein and only where there exists the requisite mutuality of obligation. See, also, *People's*

*Bank of Denton* v. *Turner* (1936), 169 Md. 430, 182 A. 314.

The record in the present appeal describes the limited extent of John A. Chickerneo's participation in the joint account with his father as the placing of his name on the account and securing his signature on the required signature card. The passbooks that have been issued since the creation of the account on September 30, 1965, have, at all times, been kept in the exclusive control and possession of appellant, Andrew Chickerneo. Furthermore, the fifth paragraph of the stipulations of facts filed in the lower court clearly establishes the "realities of ownership" in this particular account:

"All of the funds deposited and/or withdrawn from the inception of the savings account until it was closed on August 8, 1973, belong *solely* to Andrew Chickerneo, and said John A. Chickerneo had no separate interest in and to said funds outside of any legal or equitable interest which may have been created by the nature of the account." (Emphasis added.)

It is the opinion of this writer that, to the extent that a construction and application of appellee's rules permit an automatic setoff from a joint account of a *non-debtor* depositor, simply because the *debtor* has been classified as a "depositor" by having his name placed on the account and the execution of a signature card, regardless of evidence unequivocally indicating the latter's total lack of ownership in those funds, they are contrary to established precedent, R. C. 1107.06(B), and thus proscribed by *Fourth & Central Trust Co., supra* (122 Ohio St. 1). Therefore, appellee would be precluded from asserting that appellant had previously bound himself to abide by the setoff because the rules permitting that action are contrary to law.

The fact pattern presented on this appeal is just another example of problems that arise from the creation of a joint and survivorship account when an unwary depositor becomes contractually entangled without a full understanding of the legal ramifications that may result from

that undertaking. Justice Locher, in his concurring opinion in *Vetter, supra* (54 Ohio St. 2d), at page 234, urged that a greater burden of disclosure should be placed on financial institutions in this regard and his sentiments are worth repeating:

"* * * Absent similar safeguards applicable to joint and survivorship accounts, the law of contracts insures neither a knowing disposition nor a fulfillment of the true intentions of the deceased, a party to the contract. At the minimum, legislative consideration should be given to requiring that a full and understandable disclosure of the legal implication of this account be given by the financial institution to its depositors. Certainly, this preventive measure would provide at least an understandng of the rudimentary legal consequences of entering into a contract for a joint and survivorship account."

In light of the foregoing, I am not convinced that an application of the doctrine of "freedom of contract" is either dispositive of the issues presented on this appeal or brings about an equitable result. Accordingly, I must respectfully dissent from the judgment rendered herein.

LOCHER, J., concurs in the foregoing dissenting opinion.