Maurice C. PARADIS

v.

GREATER PROVIDENCE DEPOSIT CORPORATION et al.

No. 93–29–Appeal.

Supreme Court of Rhode Island.

Dec. 27, 1994.

us to adopt a similar rule. We decline the op- portunity.

William M. Dolan, III, Theodore Orson, John S. Burns, Providence, for plaintiff.

Clinton L. Poole, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the estate of Michael Montecalvo from the denial of his motion for the disbursement of funds in the receivership proceedings of Greater Providence Deposit Corporation and Greater Providence Trust Company (hereafter Greater Providence).[1] The issue before us is whether funds held in a joint account can be used to offset a defaulted loan to one of the parties named in

the account if the party in default made no contribution to the account. The Superior Court held that Greater Providence properly set off funds held in the joint account of Michael Montecalvo (Montecalvo) and his daughter Sandra S. Celona (Celona) against a loan to Celona even though the funds were contributed solely by Montecalvo, who retained control of the account. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are not in dispute. On July 10, 1987, Montecalvo opened a joint passbook savings account (1987 account) in his and his daughter's names. Both signed a signature card that stated that the account was "payable to either or survivor" of "Michael Montecalvo or Sandra S. Celona." Montecalvo's initial deposit of $10,000 on July 10, 1987, was followed by an additional deposit of $10,000 about one month later. No additional deposits, besides interest, were made into the 1987 account, and Montecalvo asserted that all the funds deposited were solely his.

Montecalvo opened a second joint account in June 1989 (1989 account) in the names of "Michael Montecalvo or Sandra Celona." Neither Montecalvo nor Celona signed the signature card of that account because it was opened as a result of a telephone solicitation by Greater Providence. The 1989 account was funded by a $5,000 transfer from the 1987 account.

Montecalvo asserted that he retained possession of the passbooks of both accounts at all times, that he made all the deposits and withdrawals, that his Social Security number was used as the tax identification number for both accounts, and that interest earned from both accounts was reported on his federal income tax returns. He explained that he had added Celona's name to the accounts to avoid probate in the event of his death.

Independently from those two accounts, Celona had secured a mortgage from Greater Providence, and in April 1990 she defaulted on the loan. In March 1991 Greater Provi-

---

1. Between July 1987 and June 1989, Greater Providence Deposit Corporation became Greater Providence Deposit & Trust. In this opinion the term "Greater Providence" refers to either entity.

dence used funds in the joint accounts as a setoff against Celona's outstanding indebtedness. In response to a complaint by Maurice C. Paradis, then Director of the Department of Business Regulation of the State of Rhode Island (DBR), Greater Providence was placed under the receivership of the DBR with the DBR's Acting Associate Director and Superintendent of Banking, Edward D. Pare, Jr., as receiver on June 5, 1991. In October 1991 Montecalvo filed a "motion for relief from automatic stay" in the receivership action in order to commence suit against Greater Providence for wrongful seizure of the funds that Montecalvo claimed were his property. After a hearing on the motion, Montecalvo received permission from the Superior Court to file an independent action against Greater Providence or, in the alternative, to file a motion for the disbursement of funds in the receivership action. Montecalvo chose to file a motion for disbursement of funds in March 1992, seeking disbursement of funds from both the 1987 and the 1989 accounts. Following a hearing, the Superior Court denied the motion on December 23, 1992, and Montecalvo appealed the denial of his motion to this court pursuant to G.L. 1956 (1985 Reenactment) § 9–24–1. Montecalvo died during the pendency of his appeal. In March 1994 this court granted a motion to substitute Sandra S. Celona, who was appointed executrix of her father's estate, as a party to this appeal.

## THE ISSUE ON APPEAL

The issue on appeal is whether the Superior Court erred in allowing Greater Providence to set off funds deposited by Montecalvo in a joint account in the names of Celona and Montecalvo against a debt incurred by Celona alone. Counsel for the DBR argued that the joint-account signature card constituted a contract between Greater Providence and the depositors and that the contract clearly permitted such a setoff and therefore should be enforced. Montecalvo, on the other hand, contended that the contract terms were ambiguous and that the joint accounts created only a rebuttable presumption of joint ownership. Consequently, Montecalvo

2. See note 3, *infra.*

argued, extrinsic evidence should be admitted to prove that he was the sole owner of the funds in the joint accounts and that the setoff by Greater Providence was therefore improper. We agree with the arguments made on behalf of the DBR.

## THE DEPOSIT CONTRACT

■ The rights and obligations of a bank and its depositors in regard to funds on deposit are governed by the terms of the contract entered into at the time the relationship is established. *Griffin v. Centreville Savings Bank,* 93 R.I. 47, 52, 171 A.2d 204, 207 (1961); *see Westerly Community Credit Union v. Industrial National Bank of Providence,* 103 R.I. 662, 668, 240 A.2d 586, 589 (1968). In *Griffin,* this court held that when the joint depositors accepted and retained a passbook containing rules and regulations, such rules and regulations constituted the depositors' contract with the bank. 93 R.I. at 53–54, 171 A.2d at 207. Moreover, the absence of an express consent to such rules and regulations does not conclusively establish that no contractual relationship arose. *Id.* at 53, 171 A.2d at 207. In the instant case, the pertinent terms and conditions were printed on the back of the signature card rather than in the passbooks. Both Montecalvo and Celona executed the signature card for the 1987 account that stated, in bold letters, "THE UNDERSIGNED ARE SUBJECT TO TERMS AND CONDITIONS ON REVERSE SIDE. PLEASE REVIEW TERMS AND CONDITIONS." We are of the opinion that upon execution of the signature card by Montecalvo and Celona, the terms and conditions stated thereon became part of the contract between the signatories and the bank.

■ Although neither Montecalvo nor Celona signed the signature card of the 1989 account, there was an oral agreement during a telephone solicitation to open a joint account. Because the terms and the conditions of the 1989 account were identical[2] to those of the 1987 account, the voluntary execution by Montecalvo and Celona of the 1987 account signature card was sufficient to charge

them with constructive knowledge of and implied consent to the terms and conditions of the 1989 account.

■■■■ In reviewing the contract between depositors and Greater Providence, we are guided by well-settled rules on the interpretation of contracts. In particular, a court must find that a contract is ambiguous before it can exercise judicial construction of the contractual terms. *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I.1994). If the court finds that the terms of a contract are clear and unambiguous, the task of judicial construction is at an end and the contract must be applied as written. *Id.* (citing *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991)).

■■■ The pertinent part of the terms and conditions printed on the back of the signature card signed by Montecalvo and Celona provides that:

"(1) GPDC [Greater Providence Deposit Corporation] may, without notice to depositor, set off any indebtedness of depositor to GPDC against any amount on deposit with GPDC, whether or not matured.

"(2) Any deposit in the name of two persons, unless otherwise stated by the depositors in writing to GPDC, shall be a joint account payable to either of said persons, whether the other be living or not, or to the guardian, executor, or administrator of the survivor and such payment shall be a sufficient release and discharge of GPDC." [3]

On almost identical facts, the Ohio Supreme Court held that the rules and regulations governing a certain account clearly provided the bank with a right to set off funds in a joint and survivorship account against debts owed to the bank by a party to the account. In that case, *Chickerneo v. Society National Bank of Cleveland*, 58 Ohio St.2d 315, 390 N.E.2d 1183 (1979), a father opened a joint savings account with his son at the defendant bank where the account was payable to either the father, his son, or the survivor of them. *Id.* at 316, 390 N.E.2d at

1184. All the funds deposited and/or withdrawn from the account belonged solely to the father, who maintained the exclusive control and possession of the passbook of the account. *Id.* The Ohio court concluded that the bank might lawfully set off funds deposited by the father in the joint savings account against delinquent loans carried solely in the name of the son. *Id.* at 321, 390 N.E.2d at 1186.

Montecalvo attempted to distinguish *Chickerneo* on the ground that the rules and regulations at issue in *Chickerneo* explicitly defined "depositor" as "the person or persons in whose name the account is carried on the books of the bank" whereas Greater Providence's signature card did not specifically define depositor. Therefore, Montecalvo contended, the Greater Providence contract is ambiguous and extrinsic evidence should be admitted to show that the depositor of the two accounts was Montecalvo and not Celona. We disagree.

■■■■ In determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning. *Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992). In applying this standard, this court has consistently held that a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation. *W.P. Associates*, 637 A.2d at 356. In the instant case, the signature card provided, in the space above the signatures of Montecalvo and Celona, that *"[e]ach of the depositors* certifies under penalty of perjury that the Tax ID Number or Social Security Number, as applicable, is correct and that *each of the depositors* is not subject to delinquent taxpayer backup withholding." (Emphasis added.) The plain and ordinary meaning of this language is that each of the undersigned was a depositor who certified the truth of certain information. Moreover, paragraph 2 of the terms and conditions explicitly stated that "[a]ny deposit in the name of two persons" was a joint account payable to either. Consequently, Montecalvo and Ce-

---

**3.** On the 1989 signature card all references to "GPDC" were changed to "GPD & T," Greater Providence Deposit & Trust.

lona were each vested with the authority to unilaterally withdraw all the funds from the account without the consent of the other. The contractual language plainly presumes that each of the named persons is a depositor with equal privileges and access to the account. Inasmuch as this language is not "reasonably and clearly susceptible to more than one interpretation" in regard to who a depositor was, *W.P. Associates,* 637 A.2d at 356, we conclude that Montecalvo and Celona were both depositors of the 1987 and the 1989 accounts, and Celona may not introduce extrinsic evidence to prove that she was not a depositor.

Paragraph 1 of the terms and conditions clearly granted to Greater Providence the right to set off "any indebtedness of depositor to GPDC against any amount on deposit with GPDC." Because we have concluded that both Montecalvo and Celona were depositors, the funds in their joint accounts were therefore subject to the bank's right of setoff against any indebtedness of either Montecalvo or Celona. Thus, we concur with the Superior Court's determination that the bank may lawfully set off funds in the 1987 and the 1989 accounts against Celona's outstanding indebtedness to Greater Providence.

 Montecalvo also argued on appeal that even if the contract were unambiguous, the form of the joint account created only a rebuttable presumption of joint ownership, and therefore, additional evidence should be permitted to overcome the presumption. We disagree. Even were we to assume *arguendo* that the form of the account merely furnished a rebuttable presumption of ownership, Montecalvo and Celona failed to rebut the presumption in a manner consistent with their contract with Greater Providence. Paragraph 2 of the terms and conditions provided that "[a]ny deposit in the name of two persons, *unless otherwise stated by the depositors in writing to GPDC,* shall be a joint account payable to either of said persons * * *." (Emphasis added.) Because the depositors here failed to follow the prescribed procedure by notifying Greater Providence in writing that their accounts were not joint accounts payable to either person, they now are precluded from rebutting the presumption of joint ownership.

 In summary we conclude that the relationship between joint depositors Montecalvo and Celona and Greater Providence was governed by the terms and conditions printed on the signature card. Further, we hold that the language of the contract was unambiguous and that extrinsic evidence should not be admitted to define a depositor. Accordingly, Greater Providence properly set off funds in a joint account against the debt of one of the named depositors notwithstanding evidence that all funds were deposited by the other depositor. Therefore, we deny the appeal, affirm the judgment of the Superior Court that denied the motion for disbursement of funds held by the receiver of Greater Providence, and remand the papers in the case to the Superior Court.