[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
JUDGEMENT ENTRY
{¶ 1} This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
{¶ 2} Appellant Morley P. Thompson, Sr., appeals the trial court's adoption of the magistrate's decision that he had entered a valid settlement agreement with appellees Lenzing Fibers Corporation ("Lenzing") and Keybank National Association ("Keybank") to discharge money judgments in their favor.
{¶ 3} Thompson contends that there had been no meeting of the minds and thus no settlement agreement. He also contends that the trial court failed, under Civ.R. 53(E)(4)(b), to independently analyze, based on his objections to the magistrate's decision, whether the agreement was void under federal and state laws governing exemptions to annuities. He also contends in his second assignment that the trial court erred by failing to rule on each of his objections. In his third assignment, Thompson argues that the trial court's entry violated the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and the Consumer Credit Protection Act ("CCPA")[2] as it applied to garnishment of earnings. He also contends in his fourth assignment that the adoption of the magistrate's decision was wrong because the settlement agreement, in essence, waived the exemption laws of R.C. 2329.66(A)(10)(b), and that such a waiver is violated R.C. 2329.661(B). In his last assignment, Thompson contends that the adoption of the magistrate's decision was preempted by ERISA because the decision related to an employee benefit plan that fell under ERISA.
{¶ 4} It is undisputed that Lenzing obtained a judgment for $307,328.76 plus interest against Thompson in a North Carolina court, and that the judgment was properly authenticated and filed in Ohio. It is undisputed that Keybank also obtained a judgment against Thompson for $2,498,337.72, plus $925.96 daily, and that only a portion of the judgment has been satisfied. Consequently, Lenzing and Keybank each filed a complaint for a creditor's bill and injunctive relief in the court below, seeking to have the monthly payments made to Thompson under a Metropolitan Life Insurance Co. ("MetLife") terminal purchase annuity contract applied to the satisfaction of the judgments. The trial court consolidated the two actions.
{¶ 5} Thompson moved to dismiss the complaints, arguing that the annuity payments were exempt from execution, garnishment, attachment or sale under R.C. 2329.66(A)(6)(b) and 2329.66(A)(10) and R.C. 3911.10,3911.11 and 3911.12. MetLife interpleaded, explaining that Thompson was the owner of the annuity certificate that provided monthly payments of $10,570.36 under a "10 year certain and life benefit arrangement." Metlife sought an order as to whom to pay the monthly proceeds.
{¶ 6} The trial court referred the matter to a magistrate for a hearing on the exemption issues raised by Thompson. Thompson withdrew his motion to dismiss, and the trial court ordered the parties to file pretrial briefs addressing all exemptions and legal defenses. It then scheduled a trial on the merits.
{¶ 7} In his pretrial brief, Thompson, claiming that the annuity was part of Thompson's pension plan, again raised his exemption claims under state law and added that the annuity proceeds were protected under ERISA and CCPA. Lenzing opposed the claims.
{¶ 8} Thompson then sought a continuance and asked the trial court to conduct a pretrial conference. Before the rescheduled date, the parties filed an agreed entry that directed Metlife to deliver the accrued monthly annuity proceeds to U.S. Bank National Association, the designated agent under an escrow agreement.
{¶ 9} Lenzing and Keybank moved to enforce an oral settlement agreement that they asserted was entered in the trial court's presence. Thompson refused to give his counsel authority to sign the written agreement memorializing the oral settlement agreement and, after obtaining different counsel, opposed the motion to enforce the settlement agreement. He asserted that there had been no settlement agreement because there had been no accounting for the payment of taxes and no duration of the agreement, that he had not given previous counsel authority to enter into the agreement, that there had been no meeting of the minds, and that the agreement failed to comply with the Statute of Frauds.
{¶ 10} After a hearing, the magistrate decided that the evidence demonstrated that a settlement agreement had been entered and that the Statute of Frauds did not require the agreement to be in writing because it could be performed in less than one year.
{¶ 11} Thompson filed objections to the magistrate's decision, this time raising not only the issues surrounding the formation of the settlement agreement, but also ERISA, CCPA, and state-law exemption matters issues that the magistrate had not determined because the parties had informed him that a settlement agreement had been reached. Thompson argued that the agreement, if it did exist, was void and unenforceable. At the hearing on the objections, the trial court did not respond to the ERISA, CCPA, or state exemption objections, believing that it was foreclosed from doing so. The trial court then journalized an entry adopting the magistrate's decision.
{¶ 12} We have no problem with concluding that a settlement agreement had been reached among the parties. "[T]he general rule is that a trial court may enforce a settlement agreement that was agreed to by the parties in the presence of the court, regardless of whether it has been reduced to writing."[3] The terms of a valid settlement agreement must be "reasonably certain and clear."[4] As explained by the Ohio Supreme Court in Kostelnik v. Helper,[5] "[H]owever, `[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.'"[6]
{¶ 13} The evidence demonstrates that the parties had agreed that the annuity payments placed into the escrow account through September 30, 2001, ($95,133.24) would be divided equally between Lenzing and Thompson. Thompson, Lenzing, and Keybank would then equally divide the annuity payments deposited in the escrow account after that. The fact that tax consequences and duration were not addressed did not, under these facts, destroy the manifestation of mutual assent. Thus, we overrule Thompson's first assignment as it relates to whether the oral agreement constituted a settlement agreement as to the terms that we have discussed.
{¶ 14} We sustain, however, that part of the first assignment asserting that the trial court erred by failing to either recommit the ERISA, CCPA, and state-law exemption issues to the magistrate or to hear those matters itself. In Ohio, "contract terms that violate public policy are unenforceable."[7] "Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare."[8] The principle is to be used cautiously, "limited to those circumstances patently within the reasons upon which the doctrine rests."[9] This is so as "not to infringe on the rights of the parties to make contracts which are not clearly opposed to some principle or policy of the law."[10]
{¶ 15} Similarly, under federal law, "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy."[11] That is because the waiver would "thwart the legislative policy which it was designed to effectuate.[12]
Whether waiver may occur "depends upon the intention of Congress as manifested in the particular statute" or, in the absence of specific intent, "consideration of the legislative policy * * * as evidenced by [the statute's] legislative history, and the provisions in and the structure of the [statute]."[13]
{¶ 16} If ERISA, CCPA, or R.C. 2329.66 is applicable under the facts of this case, it could be that the settlement agreement is void because it is against public policy. We cannot make that determination on the skeletal nature of the record before us, which has resulted from the trial court's mistaken belief that the issues had been waived.
{¶ 17} Because the settlement agreement may be void as a matter of law, we remand this case to the trial court either to decide itself whether ERISA, CCPA, or the Ohio statute applies so as to void the agreement or to recommit the matter to the magistrate with instructions to hear additional evidence regarding whether ERISA applies to the MetLife annuity, and, if so, whether ERISA's anti-alienability provision bars a settlement agreement that involves pension funds placed into an escrow account agreed to by the pension's participant; whether the proceeds from Thompson's Metlife annuity are exempted by the garnishment provisions of CCPA; and whether, if the federal law is inapplicable, the R.C. 2329.66 exemption applies, and, if so, to what extent.
{¶ 18} Because of our disposition sustaining part of Thompson's first assignment of error, we need not address his remaining assignments.
{¶ 19} Therefore, although we do not disturb the finding that the parties had entered into a settlement agreement, we reverse the trial court's judgment and remand this case for a determination whether the settlement agreement is void because it is against public policy.
{¶ 20} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Doan, and Hildebrandt, JJ.
[1] See Section 1001 et seq., Title 29, U.S.Code.
[2] See Section 1671 et seq., Title 15, U.S.Code.
[3] See Gibson v. Meadow Gold Dairy, 88 Ohio St.3d 201, 203,2000-Ohio-301, 724 N.E.2d 787.
[4] See Rulli v. Fan Co., 79 Ohio St.3d 374, 376, 1997-Ohio-380,683 N.E.2d 337.
[5] See Kostelnok v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985,770 N.E.2d 58.
[6] See id. at ¶ 17
[7] See Marsh v. Lampert (1998), 129 Ohio App.3d 685, 687,718 N.E.2d 997; Bardes v. Todd (2000), 39 Ohio App.3d 938, 942,746 N.E.2d 229; King v. Cashland, Inc. (2000), 2nd Dist. No. 99-1640;Ting v. Good Samaritan Med. Ctr. (Oct. 14, 1998), 5th Dist. No. 98 CA 00009.
[8] Garretson v. S.D. Myers, Inc., (1991), 72 Ohio App.3d 785, 788,596 N.E.2d 512, citing Chickerneo v. Society Natl. Bank (1979),58 Ohio St.2d 315, 320, 390 N.E.2d 1183.
[9] See id.
[10] See Lamont Bldg. v. Court (1946), 147 Ohio St. 183, 185,70 N.E.2d 447.
[11] See Brooklyn Sav. Bank v. O'Neil (1945), 324 U.S. 697, 704,65 S.Ct. 895.
[12] See id.
[13] See id. at 705.