DECISION
Before the Court are motions for summary judgment relating to two accounts opened by the late Angela Lima ("Decedent") with Domestic Bank ("Defendant"). The first account, numbered 3919543 ("First Account"), was opened by Decedent on February 8, 2000, styled as a joint account with right of survivorship in the names of Decedent, and her two children, Charlene Lima and Kenneth Lima ("Plaintiff"). See Pl.'s Ex.Entitled "Acct. Terms Conditions"; see also Aff. of D. Jenkins at ¶ 4. According to Defendant, on September 18, 2001, Decedent directed Defendant to delete Charlene's name from the First Account. See Aff. ofD. Jenkins at ¶ 7. Likewise, on November 21, 2001, Decedent directed Defendant to delete Plaintiff's name from the First Account, and to add both Plaintiff and Charlene as payable-on-death beneficiaries. The Defendant has been unable to locate any signature card or add/delete form used to effectuate these changes. Id. at ¶ 9. However, on October 21, 2003, Decedent directed Defendant to delete Plaintiff's name as a payable-on-death beneficiary by way of an add/delete form. Id. at ¶ 11.;see also Def.'s Ex. A. Thus, Defendant claims that at the time of Decedent's death on June 3, 2004, the First Account was titled in Decedent's name, with Charlene as beneficiary. Aff. of D. Jenkins at ¶ 12. Accordingly, the balance of the funds in the *Page 2 
First Account — $107,413.65 — was withdrawn by Charlene on June 24, 2004, and the account was closed. Id. at ¶ 13.
Plaintiff has filed a three count action against Defendant, alleging in Count I that he was a joint owner of the First Account, and that the Defendant — in violation of its own procedures — removed his name from the account, thus depriving him of his rightful interest in the balance of the funds in the account. Plaintiff, after amending his complaint, filed a motion for partial summary judgment on Count I. Defendant has filed a cross-motion for summary judgment on all three Counts of Plaintiff's complaint.
Plaintiff claims that it is undisputed that the First Account was opened by Decedent as a joint account with survivorship rights on the part of Plaintiff and Charlene. Moreover, he claims that despite the lack of a written policy requiring such a procedure, Defendant has admitted — by way of Requests for Admissions and during deposition testimony — that in order to effectuate removal of Plaintiff as a joint owner, the account had to be closed and a new account opened. Plaintiff claims that since it is undisputed that the First Account was never closed, Defendant breached its own procedure and, thus, is liable to Plaintiff for the funds he would and should have received (i.e., half of $107,413.65).
Defendant counters that Decedent had the right to unilaterally make changes to the account. Moreover, it contends the evidence conclusively establishes that Plaintiff was deleted as a beneficiary of the First Account. Specifically, it notes that on September 21, 2001, Decedent changed the First Account from a joint account with right of survivorship to a payable-on-death account and, on October 21, 2003, Decedent directed Defendant to delete Plaintiff's name as payable-on-death beneficiary. Finally, Defendant contends that it does not matter if the bank's internal policy was not followed, because the fact that she deleted his name as a payable- *Page 3 
on-death beneficiary reflected a desire to not provide for him, and requiring strict adherence to the policy would place substance over form.
Although the precise issue of whether one joint account holder may unilaterally remove another joint account holder's name from an account has never been addressed by our Supreme Court, the Court has noted that "[u]nless it is specially agreed otherwise, a banking institution and its depositors stand in the debtor and creditor relationship."Griffin v. Centreville Sav. Bank, 93 R.I. 47, 52 (1961). Thus, the rights and obligations of each with respect to the funds on deposit will be governed by the terms of the contract which they enter into at the time of the establishment of the relationship. Id. Indeed, one court has noted "a joint bank account is not the same as a joint tenancy in real property, and is subject to the provisions of the contract between the bank and its depositors." Poziombka v. Winkle (In re Estate ofVogel), 291 Ill. App. 3d 1044, 1048 (Ill.App.Ct. 1997). Accordingly, this Court must review the terms of the contract entered into between Defendant and Decedent, Plaintiff and Charlene.
The terms and conditions in effect at the time the parties entered into their agreement include a section entitled "Ownership of Account and Beneficiary Designation" defining a "Joint Account — With Survivorship (And Not As Tenants in Common)" as an account "owned by two or more persons." Pl.'s Exhibit Entitled "Account Terms Conditions." Although that document does not identify the procedure by which the name of a joint account holder can be stricken from the account, as Plaintiff notes, Defendant has admitted that it was its policy to close the account and open a new account with the names of the proper account holders on it. See Pl.'s Req. for Admissions at ¶ W;see also Dep. of M. Leca at pp. 50-52. Despite the existence of this policy, which the Defendant has admitted existed and was in effect at the pertinent time, such a procedure was employed neither on September 18, 2001, when Decedent *Page 4 
directed Defendant to delete Charlene's name from the First Account, nor on November 21, 2001, when Decedent directed Defendant to delete Plaintiff's name from the First Account, and to add both Plaintiff and Charlene as payable-on-death beneficiaries. Thus, it is clear that Defendant breached its own policy.
In Wright v. Commercial Sav. Bank, 464 A.2d 1080 (Md. 1983), a case with facts similar to those involved in the instant case, the Court held:
 the signature card indicates that the bank and the Wrights entered into a three-party contract. The bank accepted their account and all parties agreed that either of the named depositors could draw on the account. However, nothing contained in this signature card suggests that the bank could strike the name of one of the co-owners from this account, thereby unilaterally terminating that person's right to use the account. While the language indicates that each person assumed the risk that the other might withdraw any or all funds in the account at any given time, it does not suggest that either assumed the bank could remove one of their names from the account without that person's consent.
Id. at 1082-83.
Similarly, in this case, the Defendant has failed to indicate by what term or right it could permissibly strike the name of one of the "owners" of a joint account, thereby unilaterally terminating that person's right to use the account. Indeed, Defendant admits its own policy was not followed. See Def.'s Mem. at 9. Therefore, based on the law and record before the Court, Defendant is liable to Plaintiff.
However, the issue of what damages, if any, Plaintiff is entitled to is a separate matter. Plaintiff asserts that he would have received one-half of the $107,413.65 account balance because he — along with his sister — should have been a joint account holder with right of survivorship, resulting in an even split of the remaining balance. This assumption presupposes that Defendant's breach had no effect on the way the money in the account was handled. Thus, on Count I summary judgment will enter in Plaintiff's favor, but only on the issue of liability. *Page 5 
The allegations asserted in Count II relate to a joint account — #3992110 — with right of survivorship ("Second Account") opened by Decedent and Plaintiff on September 22, 2003. Aff. of D. Jenkins at ¶ 15, Ex. I. At the time of Decedent's death, this account contained the sum of $101, 504.60 withdrawn by the Plaintiff on June 16, 2004.
Plaintiff was appointed executor of Decedent's estate. According to him, Defendant led him to believe that the Second Account was a joint account with survivorship rights, thus, he did not include it in Decedent's probate estate. However, during the probate process, Plaintiff's sister, Charlene, filed a miscellaneous petition in probate court seeking Plaintiff's removal as Executor based on the allegations that because the Decedent did not open the Second Account as a joint account with survivorship rights, Plaintiff should have included it in his inventory of Decedent's estate. Plaintiff maintains that Charlene's petition was supported by a letter purportedly authored by one of Defendant's officials, Manuel Leca ("Leca"), in which Leca informed the Cranston Probate Court that Decedent did not intend to create a joint account with survivorship rights in favor of Plaintiff. Plaintiff further claims that because of the contents of the letter, which bore the imprimatur of the Defendant, he was forced to settle certain claims with Charlene. Following the settlement, Plaintiff learned for the first time, that this letter was actually composed by Charlene, who brought it into the bank (Defendant) and requested that Leca run it through Domestic's copier on paper bearing the bank's letterhead. Alarmingly, Leca complied with Charlene's request to sign the document even though he was completely unaware of its contents. See Dep. of M. Leca of5/4/07 at pp. 68-69. Moreover, Plaintiff alleges that Leca later testified that the letter was false because Decedent did intend to create a joint account with survivorship rights. Thus, Plaintiff alleges in Count II that Defendant negligently *Page 6 
misrepresented the true nature of the Second Account to him and, but for this representation, he would not have compromised his claims with his sister, Charlene.
 [T]o establish a prima facie case of negligent misrepresentation, the plaintiff must establish the following elements: (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.
Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007).
A review of Plaintiff's allegations and the applicable law compel the Court to conclude, under the particular circumstances of this case, that this cause of action cannot be sustained. Even if the Defendant knowingly misrepresented the true nature of the account to the Plaintiff, there is simply no evidence which indicates that Defendant made the representation in order to induce Plaintiff into settling with his sister. Rather, it appears that Defendant and Plaintiff's sister created the letter as evidence to support the removal of the Plaintiff, not to induce him to enter into the settlement. Thus, Defendant's motion for summary judgment on Count II is granted. As the claim for punitive damages in Count III is derivative of the claims from Count II, summary judgment is granted in Defendant's favor on this Count as well.
Plaintiff's counsel shall prepare an order in conformance with this decision.