DECISION
This matter is before the Court for decision following a court-ordered accounting by Defendant Kelly Picerne, Inc. (K P) and a series of hearings related thereto.
 I Facts, Travel Background
The facts and travel of this case have been well-documented in several prior written Decisions of this Court. SeeFriedman v. Kelly Picerne, Inc., No. PB 05-1193, 2010 R.I. Super. LEXIS 183 (R.I. Super. Dec. 6, 2010);Friedman v. Kelly Picerne, Inc., No. PB 05-1193, 2011 R.I. Super. LEXIS 20 (R.I. Super. Jan. 28, 2011). Therefore, the Court will not repeat the facts and travel of the case, except as necessary for the purposes of this Decision.[1] *Page 2 
This Court previously held, inter alia, that K P had breached its fiduciary duty to Plaintiffs, the limited partners (Limited Partners) of Quaker Towers Associates (QTA or Partnership), and awarded them the difference between the price paid by Picerne Investment Corporation — K P's corporate parent — for the Recoll Note and the amount paid by QTA to extinguish it. The Court also ordered a full accounting of the Partnership distributions and reserve account to determine the amounts due, if any, under the LP Agreement to the Limited Partners. During a prior hearing, the Court issued a ruling with respect to the amounts owed to the Limited Partners from the sale of the Partnership's pick-up truck and the balance of the reserve account. Plaintiffs now challenge K P's accounting of the amounts owed in connection with K P's failure to make annual distributions of "available net income."
 II Discussion
In its original Decision, this Court held:
 "[T]he LP Agreement does not condition distributions of `available net income' on the amount of cash or cash equivalents available to the Partnership at each year end. In light of the mandatory nature of the Partnership distributions, the General Partner had a contractual obligation to make annual distributions in accordance with the LP Agreement whenever there was an excess of `available net income.' Regardless of what Defendant may assert as `common sense business practice,' under the plain language of the LP Agreement, distributions of `available net income,' were subject only to the prior repayment of `Class A' loans." Friedman, 2010 R.I. Super. LEXIS 183, *86-87 (citations omitted).
In so holding, this Court determined that K P had breached the LP Agreement by failing to make annual distributions of "available net income" and ordered K P to conduct a full accounting of the "amounts due to [the Limited Partners] in connection with their portion of the Partnership distributions." Id. at *87. In that connection, K P has provided Plaintiffs and the *Page 3 
Court with an accounting detailing the Partnership's cash and other assets for the years 1994 through 2004 and calculating, interalia: (1) QTA's "available net income" for each of the years 1994 through 2004; (2) QTA's cash available for distribution in those years; (3) the amount of additional funds QTA required to satisfy its distribution obligations; and (4) the estimated interest expense related to borrowing those funds. See Def.'s Ex. 1, Accounting for Partner Distributions.
In support of its accounting, K P contends that following Quaker Towers' sale in September 2004, all of QTA's cash and other assets — including all "available net income" — were distributed to the Limited Partners and General Partner as required by the LP Agreement, excepting only those amounts placed in the reserve account. They maintain, therefore, that the Limited Partners have received all the money to which they were entitled, subject only to a credit for the time-value of money and a debit for the interest expense QTA would have incurred when borrowing funds to make the annual distributions. For their part, Plaintiffs challenge the consistency of K P's accounting with the Court's prior Decisions and the terms of the LP Agreement. Further, they assert that the "available net income" distributions were an obligation of the General Partner and not the Partnership, and therefore, any interest expense should be borne by K P and not used to offset the calculation of monies owed to the Limited Partners.
It is well settled that the party seeking an accounting has the burden of proving its right to the accounting. See
1 Am. Jur. 2d Accounts Accounting §§ 66-68 (2005). Further, the party ordered to account bears the burden of proving its correctness.Id.; see also 1A C.J.S.Accounting § 52 (2005) (stating that the burden of proof with regard to the correctness of an accounting is on the party ordered to account). Here, as the party in control of the books and management of the Partnership, K P was required to make the accounting and had the burden of *Page 4 
proving its correctness. In that regard, the Court finds K P's accounting to be consistent with its prior holdings and the terms of the LP Agreement, and therefore, accepts and approves it subject only to the limitations set forth below. Upon consideration of K P's accounting and the expert testimony before it, the Court unquestionably finds that the only harm Plaintiffs suffered as a result of K P's delayed distribution of "available net income" is a function of the time-value of money measured from the time each annual distribution should have been made through the date of the 2004 distribution.
Furthermore, the Court rejects Plaintiffs' attempt to collect distributions of "available net income" under Section 9 in addition to those received pursuant to Section 21 of the LP Agreement.[2]
Concededly, this Court previously held that the Limited Partners were entitled to annual distributions of "available net income" in accordance with Section 9. See Friedman,2010 R.I. Super. LEXIS 183, *86-87. However, in challenging K P's accounting, Plaintiffs fail to recognize that the Partnership had a fixed and determinable amount of assets that were converted to cash and distributed following the sale of Quaker Towers in 2004. At that time, any "available net income" improperly withheld by the Partnership was accounted for — excepting the time-value of those funds — and distributed to the Limited Partners. In other words, if QTA had actually made annual distributions of "available net income," the distribution collected by Limited Partners in 2004 would have necessarily been reduced by those prior distributions. Consequently, the Limited Partners are not entitled to the actual amount of the previously unpaid distributions of "available net income" in addition to what they previously received in 2004. *Page 5 
Moreover, it is uncontroverted that QTA lacked sufficient cash to make annual distributions of "available net income" and necessarily would have accrued an interest expense on the funds borrowed to make those distributions.[3] Along those lines, the Court rejects Plaintiffs' contention that K P must bear that interest expense. Indeed, Plaintiffs' claim that distributions of "available net income" are an obligation of the General Partner is simply inconsistent with the terms of the LP Agreement. In relevant part, the LP Agreement provides:
 "9. Distribution of Available Net Income. As used in this Agreement, the term `available net income' for any year shall mean excess, if any, of (a) the net income of the [P]artnership for such year, over (b) all amounts paid or accrued in such year on account of the principal on mortgages and other indebtedness of the [P]artnership. The [P]artnership's available net income, after the payment of all Class A loans provided for in Section 11.2 hereof[,] shall be distributed not less often than annually as follows:
 "9.1. All of the available net income for each year up to $18,000 shall be distributed on a non-cumulative basis to the Limited Partners. . . . All of the available net income for each year in excess of $18,000 and up to $36,000 shall be distributed on a non-cumulative basis to the General Partner.
 "9.2. Available net income for each year in excess of $36,000 shall be distributed to the partners (Limited and General), without priority. . . ." See Pls.' Ex. A, LP Agreement §§ 9-9.2 (emphasis added).
Therefore, under the plain language of the LP Agreement, distributions of "available net income" are distributions of Partnership assets and are an obligation of the Partnership itself.See Aetna Cas. Sur. Co. v. Graziano,587 A.2d 916, 917 (R.I. 1991) (quoting Malo v. AetnaCas. Sur. Co., 459 A.2d 954, 956 (R.I. 1983) *Page 6 
(stating that when an agreement's terms are clear and unambiguous, its terms must be applied as written and the parties are bound by them)); Paradis v. Greater Providence Deposit Corp.,651 A.2d 738, 741 (R.I. 1994) (explaining that when "determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning").
Correspondingly, Plaintiffs' assertion that the General Partner's obligation to make interest-free loans to the Partnership entirely negates the interest expense contemplated by K P's accounting, is similarly inconsistent with the terms of the LP Agreement. Although Section 11.3 requires the General Partner to make interest-free loans to the Partnership to meet an operating deficit or negative cash flow, K P's obligation in that regard is limited to a maximum aggregate amount of $75,000.[4] See Pls.' Ex. A, LP Agreement § 11.3. Therefore, notwithstanding K P's obligation, QTA would have needed additional third-party loans to make the annual distributions of "available net income" and would have accrued interest in that connection. See Def.'s Ex. 1, Accounting for Partner Distributions. For that reason, the Court *Page 7 
finds that K P's accounting appropriately contemplates an offset for QTA's interest expense. The Court notes, however, that the actual amount of the offset detailed in K P's accounting must be modified to reflect the $75,000 interest-free loan from K P contemplated by the LP Agreement, and the resulting reduction in accrued interest.
 III Conclusion
Consequently, upon consideration of the parties' arguments and the evidence and testimony before it, the Court finds K P's accounting to be the best evidence of the damages suffered by Plaintiffs as a result of Defendant's failure to make annual distributions of "available net income." Accordingly, the Court accepts outright K P's accounting, subject only to the limitations set forth herein.
Plaintiffs shall present a final order and judgment consistent with this Decision, and the Court's prior Decisions, which shall be settled after due notice to counsel of record and an opportunity to be heard.
[1] Capitalized terms, unless otherwise defined herein, have the meaning assigned to them in the Court's prior Decisions.
[2] Section 21 provides for, among other things, the distribution of sale proceeds from the sale or liquidation of Partnership assets upon the dissolution or termination of the Partnership.See Pls.' Ex. A, LP Agreement §§ 21-21.5.
[3] Plaintiffs contest K P's reliance on the year-end audited financial statements to determine the cash available to QTA for the annual distributions of "available net income" on July 1st. The Court, however, takes notice of the fact that the accounting experts for both parties relied upon these statements for their analysis, and finds that the use of these statements does not affect the accuracy or reliability of K P's accounting.
[4] Section 11.3 provides:
 "T]he General Partner shall loan to the [P]artnership from time to time either before or after March 31, 1983, such additional amounts up to a maximum of $75,000 as are from time to time required to meet any annual operating deficit and any annual negative cash flow, which loans shall be known as `Class B loans', provided, however, that the aggregate of Class B loans to be made by the General Partner during the calendar years 1978 through 1982 shall not exceed the aggregate amounts theretofore paid to the General Partner as its special management fee pursuant to Section 15 hereof. All such Class B loans made by the General Partner pursuant to the provisions of this Section 11.3 shall be without interest and shall remain outstanding until the dissolution of the [P]artnership, a mortgage refinancing or any other event provided for in Section 10." See Pls.' Ex. A, LP Agreement § 11.3 (emphasis in original).

 *Page 1